United States District Court
Southern District of Texas

**ENTERED**

March 07, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARC WYATT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-356 |
| | § | |
| MATAGORDA COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Marc Wyatt (TDCJ #01853251) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights. Wyatt, who proceeds *pro se* and *in forma pauperis*, alleges that law enforcement officers failed to secure his personal property following his arrest on a felony warrant, which resulted in the theft of that property. The Court initially had tremendous difficulty determining whom Wyatt was suing and under what theory. Wyatt has filed a more definite statement of his claims at the Court's request (Dkt. 18) and has responded to a show cause order issued by the Court (Dkt. 24). Having considered Wyatt's factual allegations and the applicable law, the Court will dismiss Wyatt's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim on which relief may be granted.

## I.    BACKGROUND

Wyatt is serving an 80-year sentence in the Polunsky Unit of the Texas Department of Criminal Justice ("TDCJ"). He was convicted of criminal mischief in Lee

County for removing aluminum coils from air-conditioning units and sentenced as a habitual offender. *See Wyatt v. State*, No. 03–13–00307–CR, 2014 WL 7475488 (Tex. App.—Austin Dec. 19, 2014, pet. ref'd). His claims in this case stem from his arrest for that crime. Because Wyatt's factual allegations have materially shifted over the course of his filings, the Court will summarize the facts as stated in his most recent filing, a response to this Court's show cause order.

On May 15, 2012, Wyatt was arrested in Matagorda County on a Lee County felony warrant and taken to the Lee County Jail (Dkt. 24 at p. 1). The arrest was apparently conducted jointly by a Bay City police officer (Bay City is the county seat of Matagorda County) and a Giddings police detective (Giddings is the county seat of Lee County) (Dkt. 24 at p. 1). The Bay City officer released Wyatt's personal property—the keys to Wyatt's home and truck, Wyatt's cell phone, Wyatt's wallet, and some cash—to Wyatt's sister (Defendant Michele Wyatt—"Michele") (Dkt. 24 at p. 1). Wyatt claims that the Bay City officer (whom he has sued as a John Doe) was instructed to release the property to Michele by the Giddings detective (whom he has not sued) (Dkt. 24 at p. 1). According to Wyatt, "[t]his request by [the Giddings detective] was made to get [Michele] to enter plaintiff's house and remove what was believed to be evidence that could be used against plaintiff in his criminal mischief charge" (Dkt. 24 at p. 1). Wyatt does not provide any support for his statement of the detective's motives—he did not even mention the detective until he responded to the Court's show cause order (Dkt. 24 at

2

p. 1). Michele and a friend of hers (Defendant Elisa Garza—"Garza") then entered Wyatt's home and removed items belonging to Wyatt (Dkt. 24 at p. 1).

On May 16, 2012, the day after Wyatt's arrest, Garza told Wyatt by phone that she and Michele had removed items from Wyatt's residence and placed them in a storage building owned by a friend of Wyatt's (Dkt. 24 at p. 1). Wyatt did not object either to the entry of his home or to the placement of his belongings in the storage building (Dkt. 24 at p. 1). However, in July of 2012, Wyatt received a letter from a family friend informing him that Garza and Michele had in fact sold the belongings taken from his residence (Dkt. 24 at p. 1). Wyatt contacted Michele and arranged a visit with her at the Lee County Jail (Dkt. 24 at p. 1). At that visit, Michele told Wyatt "that the Bay City Police department gave her permission to enter the house and that there was nothing Wyatt could do because he would not be allowed to file a complaint [about] the [burglary]" (Dkt. 24 at p. 1).

On October 26, 2012, Wyatt contacted the Bay City Police Department to "file a complaint of a burglary [at] his residence" (Dkt. 24 at pp. 1–2). The dispatcher told Wyatt "that the policy of the Matagorda County police department was that in order to file a [complaint] you could not be in jail" (Dkt. 24 at p. 2). Wyatt "knows that this is not a [policy]" and "believes that the Bay City police department singled him out because the burglary was [committed] with the aid of the Bay City police department in partnership with [the] Giddings police detective" (Dkt. 24 at p. 2).

3

On October 3, 2013, Wyatt, who by then was in TDCJ custody, filed a complaint in this Court seeking relief under a state-law claim for conversion and naming as defendants Michele; Garza; the Bay City officer (as a John Doe); Mike Horton; Sheila Horton; and Paul Horton (Dkt. 24 at p. 2).[1] The property at issue consisted of three used cars; a flatbed trailer; a generator; "HVAC service tools and related equipment;" a laptop; a boat; and $75.00 in cash (Dkt. 24-1 at p. 2). The District Clerk's office returned the complaint to Wyatt with the following note: "If you wish to bring your complaint to the court's attention by way of a civil rights suit or a habeas corpus petition, you may request the proper forms from the clerk" (Dkt. 24-1 at p. 1). The District Clerk's office never docketed the complaint,[2] but this Court would have lacked subject matter jurisdiction over the lawsuit anyway. Even though Wyatt invoked the diversity jurisdiction statute (28 U.S.C. § 1332), he failed to meet the requirements of that statute because he affirmatively pled that all of the parties were citizens of Texas and that he sought less than $75,000 (specifically, he sought $14,050.00) in damages (Dkt. 24-1 at p. 2). Wyatt does not say that he ever filed his conversion lawsuit in state court, where it should have been brought.

Wyatt then filed this lawsuit, in which he has listed eight defendants: (1) Michele; (2) Garza; (3) Matagorda County; (4) City of Bay City; (5) unknown police chief; (6) unknown sheriff; (7) unknown dispatcher; and (8) unknown police officer. The Court has

---

[1] It is unclear who the Hortons are. They are not defendants in this lawsuit.

[2] The Court did not learn about the complaint until Wyatt filed his response to the Court's show cause order. Before that response, the Court thought that Wyatt had filed a conversion lawsuit in state court. In his more definite statement, Wyatt said that he "attempted to file a complaint for the illegal conversion of property by filing a complaint in the Bay City district court on the 3rd day of October 2013" (Dkt. 18 at p. 5). There is no federal court in Bay City; this Court is in Galveston.

twice requested clarification of Wyatt's claims. Respectfully, figuring out Wyatt's claims has not gotten much easier, which is likely attributable to the fact that Wyatt, by his own admission, is really just trying to sue for conversion:

> Wyatt filed this civil [rights] complaint after what he believed to be a denial of his tort claim [for conversion].
> . . .
> Having followed the instructions of this court, Wyatt believed that his tort claim [for conversion] was not the avenue for relief in this cause. Not being skilled in the law, Wyatt simply followed this court's instruction and filed a civil [rights] complaint.
> Dkt. 24 at p. 3.

Regrettably, it is obvious that Wyatt misunderstood the notice from the District Clerk. The notice was neither a "denial" of Wyatt's conversion claim nor an "instruction" to do anything. Wyatt simply filed his conversion claim in the wrong court.

In this lawsuit, the Court discerns two claims: (1) that the defendants deprived Wyatt of his personal property in violation of his right to due process; and (2) that the law-enforcement defendants selectively provided police protection in violation of the Equal Protection Clause.[3]

---

[3] Wyatt's original complaint also mentions "negligence, failure to train, failure to investigate, superior respondant [sic], objective reasonableness, deliberate indifference" (Dkt. 1-1 at p. 3). Wyatt's filings never provide any elaboration on these claims beyond conclusory allegations. Negligence and *respondeat superior* generally will not support liability under Section 1983. *See Kohler v. Englade*, 470 F.3d 1104, 1114–15 (5th Cir. 2006); *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir. 1988). The "failure to investigate" claim is subsumed within Wyatt's equal protection claim. The claim for "failure to train" is never supported by any specific factual allegations. The use of the term "objective reasonableness" appears to be another reference to negligence. The use of the term "deliberate indifference" appears to be another reference to the failure-to-train claim.

## II.   **THE PLRA**

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Wyatt, proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Wyatt proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless,

6

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.  **DUE PROCESS**

Wyatt claims a violation of his due process rights, though he does not specify whether he is invoking procedural or substantive due process.

### *a. Procedural due process*

Wyatt's procedural due process claims are barred by the *Parratt/Hudson* doctrine. *See Parratt v. Taylor*, 451 U.S. 527, 541–44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Under the *Parratt/Hudson* doctrine, a deprivation of property—whether negligent or intentional—by state officials that is random and unauthorized does not rise to the level of a procedural due process violation if state law provides an adequate post-deprivation remedy. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996). "The doctrine is meant to protect the state from

7

liability for failing to provide pre-deprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)." *Brooks*, 84 F.3d at 165 (hyphen added; parenthetical in original). The Fifth Circuit has further clarified that the doctrine applies when the state provides adequate post-deprivation remedies and: (1) the deprivation was unpredictable or unforeseeable; (2) pre-deprivation process would have been impossible or impotent to counter the state actors' particular conduct; and (3) the conduct was unauthorized in the sense that it was not within the officials' express or implied authority. *Caine v. Hardy*, 943 F.2d 1406, 1413 (5th Cir. 1991) (en banc). In Texas, the tort of conversion generally constitutes an adequate post-deprivation remedy. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). The burden is on the plaintiff to show that the State's post-deprivation remedy is not adequate. *Myers*, 97 F.3d at 94. One way in which the plaintiff can do this is to show that the state courts denied his claim for some reason other than lack of merit. *Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983).

The question of whether the defendants were acting pursuant to official policy is often an important factor in deciding whether the *Parratt/Hudson* doctrine applies. For instance, the doctrine applies when a prison guard destroys an inmate's property if the guard is "not acting pursuant to any established state procedure" but is instead pursuing a "random, unauthorized personal vendetta against the prisoner." *Zinermon v. Burch*, 494 U.S. 113, 129–30 (1990) (discussing the facts of *Hudson*). On the other hand, the doctrine does not apply when a sheriff acts in accordance with county policy and as a

8

result deprives a pretrial detainee of wages to which he is entitled under state law—such actions, meaning those taken pursuant to official customs, policies, and procedures, "can hardly be labeled 'random and unauthorized.'" *See Brooks*, 84 F.3d at 164–65. Wyatt, who has now had two opportunities to clarify the claims made in his original complaint, does not allege that his property was taken by anyone acting pursuant to any official policy, custom, or procedure. Rather, his factual allegations spell out what appear to be the very definition of random, unauthorized acts. The two defendants who actually took Wyatt's belongings (Michele and Garza) were not even employed by any law enforcement agency, though Michele was a fire extinguisher inspector (Dkt. 18 at p. 1). And the Giddings police detective who was allegedly the driving force behind Michele's entry into Wyatt's home is neither a defendant himself nor employed by one. To the extent that Wyatt mentions policy at all—and he only mentions it in connection with his equal protection claim, which is discussed below—he actually argues that he was singled out in *violation* of policy, not in accordance with it. Wyatt has also failed to show that the remedy of a state-law conversion claim is inadequate. In fact, Wyatt, as previously discussed, clearly wants to pursue this lawsuit under a state-law conversion theory; he simply filed his conversion claim in the wrong court (i.e. this Court instead of state court).

In short, Wyatt's procedural due process claims fail. *See Krause v. Leonard*, 352 Fed. App'x 933, 936 (5th Cir. 2009) (holding that a pretrial detainee failed to state a cognizable claim under Section 1983 when he sued "police both for losing valuable

9

possessions from his impounded automobile and for allowing thieves to steal from his trailers during his time in jail"); *Stewart v. Ramirez*, No. H-08-449, 2009 WL 890394, at *4 (S.D. Tex. Mar. 27, 2009) (holding that a pretrial detainee failed to state a cognizable claim under Section 1983 when he sued a police officer for confiscating his car keys during his arrest and giving them to his ex-wife); *see also Seay v. Hutto*, 483 Fed. App'x 900, 902 (5th Cir. 2012) (holding that the *Parratt/Hudson* doctrine barred a prisoner's claim that prison officials colluded with prison gangs to take his personal property when the prisoner did not allege that his property was taken pursuant to an official policy).

### b. Substantive due process

Wyatt does not appear to be alleging a substantive due process claim.[4] To the extent that he is, that claim must also fail. "The Supreme Court . . . has repeatedly held that where the Fourth Amendment fully protects against a particular government intrusion, courts cannot consider substantive due process rights." *Roe v. Tex. Dept. of Protective and Regulatory Services*, 299 F.3d 395, 411–12 (5th Cir. 2002). Even though Wyatt has not made a claim under the Fourth Amendment,[5] the Fourth Amendment

---

[4] A substantive due process claim, unlike a procedural due process claim, would not be barred by the *Parratt/Hudson* doctrine. *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289–90 (5th Cir. 2002).

[5] Because there is no Fourth Amendment claim, the Court does not find it necessary to decide whether Wyatt has sufficiently alleged that Michele and Garza were acting under color of state law when they entered his home. If they were not, then their conduct is not actionable under Section 1983. *Harris v. Rhodes*, 94 F.3d 196, 197–98 (5th Cir. 1996). Individuals pursuing private aims and not acting by virtue of state authority are not acting under color of state law. *Id.* That said, the Court doubts that Wyatt's allegations are sufficient. "The allegation of a conspiracy between private and state actors requires more than conclusory statements." *Priester v. Lowndes County*, 354 F.3d 414, 423 & n.9 (5th Cir. 2004). Wyatt has offered only conclusory allegations, presented for the first time in his response to the Court's show cause order, of a

provides a specific textual source of protection from the sort of governmental behavior about which Wyatt appears to be complaining—namely, unreasonable intrusion into his home and interference with his possessory interest in his personal property—and the existence of such a textual source prohibits resort to "the more generalized notion of substantive due process[.]" *Albright v. Oliver*, 510 U.S. 266, 273–74 (1994) (quotation marks omitted). Moreover, Wyatt does not have a Constitutional right to have Michele, Garza, or anyone else criminally prosecuted for burglary or theft. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). Rather, "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D. and Texas,* 410 U.S. 614, 619 (1973); *see also Joseph v. Lewis,* 95 F.3d 54, 1996 WL 460071, at \*1 (5th Cir. July 30, 1996) ("Joseph's allegations that the defendants interfered with his right to file criminal charges against a correctional officer fail to support an arguable constitutional claim[.]"). "The decision to file or not file criminal charges falls within th[e] category of acts that will not give rise to section 1983 liability." *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990).

Wyatt's invocation of due process, whether it is meant to be procedural or substantive, fails to state a claim against any of the defendants.

---

conspiracy between Michele and the police; and, notably, he did not even sue the Giddings detective with whom Michele purportedly conspired. That the police released Wyatt's personal property, including the keys to his house and truck, to Michele—his sister—does not alone suffice to show a conspiracy to violate Wyatt's Fourth Amendment rights. *See id.* ("Without knowledge of the content of the conversation or any objective evidence of an agreement, Priester's assertion is nothing more than conclusory."). To the contrary, Wyatt admits that he found Michele's entry into his home unobjectionable until he learned that she and Garza had sold his property instead of putting it into storage (Dkt. 24 at p. 1).

## IV.   **EQUAL PROTECTION**

Wyatt also makes a class-of-one equal protection claim, arguing that he was intentionally treated differently from others similarly situated when the Bay City police dispatcher told him that he would have to wait until he was no longer incarcerated to file a report that Michele and Garza had burglarized his house (Dkt. 24 at p. 3). The Court notes that Wyatt's equal protection claim has drastically pivoted. Wyatt initially claimed that Bay City and Matagorda County were discriminating against him because of his membership in a particular class, that class being incarcerated persons (Dkt. 1-1 at p. 4; Dkt. 18 at p. 2). In its show cause order, the Court noted that, though the Supreme Court has said that the State "may not selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause"—*DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989)—there did not appear to be any authority establishing that prisoners are a protected class for the purposes of equal protection jurisprudence.[6] *Carson v. Johnson*, 112 F.3d 818, 821–22 (5th Cir. 1997); *see also Brown v. Allen*, No. 3:16-CV-214, 2016 WL 2855581, at *4 (N.D. Tex. Apr. 25, 2016), *adopted*, 2016 WL 2827038 (N.D. Tex. May 13, 2016)

---

[6] The Fifth Circuit "has cautioned that the Equal Protection Clause should not be used to make an end-run around the . . . principle that there is no constitutional right to state protection for acts carried out by a private actor." *Beltran v. City of El Paso*, 367 F.3d 299, 304 (5th Cir. 2004); *see also McKee v. City of Rockwall, Tex.*, 877 F.2d 409, 414 (5th Cir. 1989) ("McKee can sustain her claim only by showing that the non-arrest was the result of discrimination against a protected class.").

("[N]either criminals nor individuals with a criminal background are protected classes."); *Ivey v. Tishomingo Cnty., Miss.*, No. 1:10-CV-165, 2010 WL 6580499, at *3 (N.D. Miss. Nov. 15, 2010), *adopted*, 2011 WL 1672028 (N.D. Miss. May 4, 2011) ("The court can find no authority to support the plaintiff's contention that criminal defendants who are denied bond represent a protected class for equal protection purposes[.]"). In his response to the Court's show cause order, Wyatt now proceeds under a class-of-one theory. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). It is hard to reconcile Wyatt's later equal protection claim with his earlier one. Wyatt first alleged an equal protection violation because Matagorda County and Bay City had a policy of refusing to investigate crimes reported by incarcerated persons, a claim he supported with the purported statement of a Bay City police dispatcher. Now he is alleging a class-of-one equal protection violation on the sole basis that he believes the dispatcher was actually lying, and the impetus behind the change in Wyatt's claims is apparently the Court's citation to caselaw indicating that prisoners are not a protected class.

In any event, Wyatt has not adequately set out a class-of-one claim. The Fifth Circuit has said "that while there is no general constitutional right to police protection, the state [cannot] discriminate in providing such protection." *Mata v. City of Kingsville, Tx.*, 275 Fed. App'x 412, 415 (5th Cir. 2008) (citing *Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002)). The *Shipp* framework imposes a heavy burden, however. In order to succeed on his class-of-one claim, Wyatt must show: (1)

13

that he was intentionally treated differently from others similarly situated; (2) that

illegitimate animus or ill will motivated the disparity; and (3) that there was no rational

basis for the difference in treatment. *Mata*, 275 Fed. App'x at 415–16; *Shipp*, 234 F.3d at

916. Wyatt's claim fails to meet this test.

### a.  Disparate treatment

To begin with, Wyatt has not identified any similarly situated people who were

treated more favorably than he, a point the Court considers crucial. Not all people are

similarly situated; in this context, given the Bay City dispatcher's alleged statements

about city and county policy, incarcerated people are not similarly situated to those who

are free. To be considered similarly situated, "a plaintiff and his comparators (those

alleged to have been treated more favorably) must be identical or directly comparable in

all material respects." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942

(7th Cir. 2010). As the Seventh Circuit has aptly phrased it, "[t]he 'similarly situated'

analysis is not a precise formula," but "what is clear is that similarly situated individuals

must be very similar indeed." *Id.* (quotation marks and brackets omitted). For instance,

the D.C. Circuit has held that two organizations were not similarly situated when one had

"a single contact" with a Specially Designated Global Terrorist organization ("SDGT")

and the other had an "extensive relationship" with it. *Islamic American Relief Agency v.*

*Gonzales*, 477 F.3d 728, 735–36 (D.C. Cir. 2007) ("[T]o survive summary judgment

IARA–USA must show that it was treated differently than a similar organization with

similar ties to an SDGT."). Wyatt has not identified any comparators, let alone any who

were similarly situated to him, which is fatal to his equal protection claim. *Kyles v. Garrett*, 222 Fed. App'x 427, 429 (5th Cir. 2007) ("Beyond conclusional allegations that others similarly situated have been granted parole, . . . Kyles offers no specific factual support for his assertions.").

### b.  Illegitimate animus or ill will

Furthermore, Wyatt has not adequately alleged the existence of illegitimate animus or ill will towards him. In a class-of-one case alleging unequal police protection, the plaintiff must show "that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Shipp*, 234 F.3d at 916 (quotation marks omitted); *see also Mata*, 275 Fed. App'x at 415 (quoting *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000) and explaining that claims of unequal police protection require proof that the cause of the differential treatment of which the plaintiff complains was a "totally illegitimate animus" towards the plaintiff by the defendant). The plaintiff must present more than conclusory statements. *Mata*, 275 Fed. App'x at 415–16. The horrifying facts of *Shipp* provide a good example of a plausible claim. The plaintiff in *Shipp* was the victim of an apparently long, increasingly violent pattern of spousal abuse that culminated in her husband's kidnapping her (she had fled to her sister's house, one of many times she had hidden at the home of a relative), raping her, and shooting her in the chest with a shotgun. The plaintiff (who miraculously recovered) stated a potentially viable claim by alleging in her complaint that the local sheriff's department turned a blind eye to the spousal

15

abuse because her mother-in-law was a sheriff's deputy and a dispatcher. *Shipp*, 234 F.3d at 916–17. Particularly striking was the plaintiff's allegation that the police response to her kidnapping and rape was delayed because her mother-in-law was the dispatcher who received the call. *Id.*

> The Fifth Circuit wrote:

>> It is undisputed that Betty Shipp's son engaged in reprehensible behavior against her daughter-in-law that finally resulted in law enforcement and judicial intervention. It is not improbable that Betty Shipp developed some animosity against her daughter-in-law during her volatile relationship with Dalton or after Shipp fled when Dalton's escalated abuse prompted criminal charges against him. If deputy Betty Shipp did foster ill-will against her daughter-in-law that ultimately influenced the level of protection Shipp received from the [Sheriff's Office], Shipp may be able to establish an unequal police protection claim[.]
>> *Id.*

Wyatt's allegations are nowhere near as compelling as those found in *Shipp*. The only defendants with whom Wyatt even has personal relationships are Michele and Garza (the other individual defendants are John Does—Wyatt does not even know their names), neither of whom worked for the Bay City Police Department or the Matagorda County Sheriff's Office and neither of whom, as far as the Court can see, had any influence whatsoever on whether law enforcement responded to his burglary call. Wyatt does allege that the dispatcher's refusal to take his burglary call was part of a cover-up of the purported conspiracy between the police and Michele, but he has not provided any factual support for his bald statement that such a conspiracy existed. It is not clear why the officers who were investigating the criminal mischief charges against Wyatt would need

to conspire with Michele to violate his Fourth Amendment rights in order to further their investigation—they had already arrested Wyatt pursuant to a valid warrant. "If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases." *United States v. Jones*, 994 F.2d 1051, 1055–56 (3d Cir. 1993). Although it is true that one can have probable cause to arrest a person without having probable cause to search that person's home, "certainly there are many instances in which, once the perpetrator of the crime has been identified, it will be permissible to infer that the instrumentalities and fruits of that crime are presently in that person's residence." 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 3.1(b) (5th ed. 2016). This appears to be one of those instances. If it is not, Wyatt does not say why not. Investigators were able to obtain an arrest warrant for Wyatt for stealing air conditioner coils, and they arrested him in Matagorda County, where he lived; by all indications, they could have met the standard for obtaining a search warrant for his residence as well, had they seen the need. Notably, Wyatt does not actually allege that any evidence used to convict him was taken from his house. Wyatt's allegations are too conclusory, and his class-of-one claim fails on the animus element as well.

Wyatt has not stated a claim for relief. The Court will dismiss his complaint.

## V.    CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.    Wyatt's claims are **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim on which relief may be granted.

2.    All pending motions are **DENIED** as moot.

The Clerk of this Court shall send a copy of this Order to the parties.

SIGNED at Galveston, Texas, on _____March 7_____, 2017.


_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

18